IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § | |
| Plaintiff/Respondent, | § § | |
| V. | § § | CR. No. C-09-008(1) (C.A. No. C-10-312) |
| CARLOS ALBERTA CABRERA-RUIZ, | § § | |
| Defendant/Movant. | § | |

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE, DISMISSING MOTION TO MODIFY RESTITUTION ORDER AND <u>DENYING CERTIFICATE OF APPEALABILITY</u>

Pending before the Court is Carlos Alberta Cabrera-Ruiz' (Cabrera-Ruiz) motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 with supporting memorandum. D.E. 127.[1] The government filed its combined response and motion to dismiss. D.E. 131. Cabrera-Ruiz has not filed a reply, but has filed several motions, some of which that have been addressed by separate Orders. Still pending are Cabrera-Ruiz' objections to the government's motion and his motion to modify the order of restitution. D.E. 132, 144. The Court DENIES Cabrera-Ruiz' § 2255 motion, DENIES his motion to modify restitution, and also DENIES Cabrera-Ruiz a Certificate of Appealability.

### I. JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

---

[1] Docket entry references are to the criminal case, Cr. C-09-008-1.

## II.  FACTUAL BACKGROUND

### A.  Criminal Offense

Cabrera-Ruiz was arrested in December 2008 along with 14 others after law enforcement attempted to stop a pick-up truck in which he and the others were riding. Cabrera-Ruiz and the others were found after the pick-up truck became disabled in a field after running through a barbed-wire fence and steep ditch. As a result of the impacts, two men died and others were injured. D.E. 1. Afterwards, all of the passengers were located in the area near the vehicle. They were from Mexico, Guatemala, Honduras, and El Salvador. Id. All of those found admitted being in the country illegally and to paying smugglers to get them into the United States. Id. Cabrera-Ruiz was among those taken into custody. He was later identified by the others as their brush guide. Id.

### B.  Criminal Proceedings

Cabrera-Ruiz made his initial appearance before a federal Magistrate Judge two days after his arrest, at which time he was appointed counsel. D.E. 2. He was ordered detained pending trial. D.E. 4. Cabrera-Ruiz was indicted in January 2009, approximately two weeks after his arrest, on one count of conspiracy and 13 counts of aiding and abetting transportation of illegal aliens. 8 U.S.C. §§ 1324(a)(1). D.E. 43.

Cabrera-Ruiz was arraigned and a superseding indictment was filed in late February 2009. D.E. 50. The superseding indictment alleged that Cabrera-Ruiz' actions "caused serious bodily injury and placed in jeopardy the life of persons." Id. A second superseding indictment was filed in March 2009, that alleged the two deaths. D.E. 56. Cabrera-Ruiz was

rearraigned on the second superseding indictment a week later. Minute Entry March 18, 2009.

Cabrera-Ruiz pled guilty without a plea bargain to Count One of the second superseding indictment in March 2009. D.E. 62. Sentencing was held in June 2009. D.E. 93. Cabrera-Ruiz was sentenced to 108 months in the Bureau of Prisons to be followed by 5 years supervised release, no fine, a $100 special assessment and restitution in the amount of $103,915.35. D.E. 93, 94.

Cabrera-Ruiz appealed. D.E. 100. The Fifth Circuit affirmed, holding that the sentence, which included an upwards departure, was not an abuse of discretion. D.E. 125.

Cabrera-Ruiz then filed his timely motion to vacate in September 2010. D.E. 127. The Court ordered the government to answer. D.E. 128. After filing his § 2255 motion, Cabrera-Ruiz filed a Motion for Due Process to require the government to answer, which the Court denied as moot. D.E. 129, 130. The government filed its response and motion to dismiss on December 22, 2010. D.E. 131. Cabrera-Ruiz filed an objection in which it appeared that he believed that the Court had ruled on the merits of his § 2255 motion. D.E. 132. He then appealed to the Fifth Circuit from this Court's purported denial of his motion (D.E. 133), filed a motion to proceed *in forma pauperis* and requested a certificate of appealability. D.E. 134, 135. This Court denied the motions as premature. D.E. 139. The Fifth Circuit dismissed the appeal on the grounds that it did not have jurisdiction. D.E. 142.

In February 2011, Cabrera-Ruiz filed a motion to Modify Order of Fine, which this Court dismissed in March 2011. D.E. 137, 141. In June 2011, Cabrera-Ruiz sent a letter to

the Clerk requesting the status of his motion to modify his fine and requesting a docket sheet. D.E. 143. The Clerk's Office sent him a docket sheet. On July 25, 2011, Cabrera-Ruiz filed a motion to modify his order of restitution which is addressed herein. D.E. 144.

At rearraignment, Cabrera-Ruiz agreed with much of the factual recitation by the government's attorney. D.E. 118 at 36, 45-46. Cabrera-Ruiz was described as one of two brush guides for persons entering the country illegally. He recruited the other brush guide, his co-defendant.

The illegal aliens made arrangements in their home countries of Mexico, Honduras, El Salvador and Guatemala to be smuggled into the United States. They were guided to Reynosa Tamulipas, Mexico by members of the smuggling organization. In Reynosa, they were taken to a house where they waited to cross the border. Id. at 38. The group crossed the Rio Grande River near Hidalgo, Texas in multiple small groups and were then consolidated in a house in McAllen where they met Cabrera-Ruiz. Id. The aliens told Border Patrol agents that Cabrera-Ruiz was in charge of the house in McAllen where they stayed before beginning their journey north. Cabrera-Ruiz provided the group with food for the aliens to cook while they were in the house. Id. at 40.

After the aliens were in the McAllen house for a while, they were taken in groups of two to board a pick up truck and transported to a location south of the Falfurrias Border Patrol station. They left the vehicle and walked through the brush for approximately 30 hours. The terrain is very brushy and is difficult to walk through. The area has few inhabitants, little water and has hazards including snakes, some poisonous. Cabrera-Ruiz

guided them, along with his co-defendant. While guiding, Cabrera-Ruiz used a two-way radio. He continually urged them to go faster. Id. The group arrived at a roadway where they hid in the brush until a pick up came by. The truck was driven by the same driver who dropped the aliens south of Falfurrias. Id. at 39. The group was told to get into the truck quickly. Most of them were placed in the bed of the pick up and two were told to ride in the toolbox. They traveled north for about two hours before they encountered law enforcement. Id.

While the group was traveling north, a San Patricio County, Texas deputy noticed that the truck driver committed a traffic violation and attempted to stop the pick-up. The driver sped off at a high rate of speed and veered off the highway through a field, northeast of Mathis, Texas. The truck went through a barbed-wire fence and a steep ditch where the injuries occurred. Although the vehicle did not roll-over, it stopped suddenly and one man died, apparently from hitting his head against the tool box in the bed of the truck. Id. at 6. Another man was thrown from the truck and died from internal injuries. Id. at 36. Eventually 16 persons were located in the vicinity of the truck and arrested, including Cabrera-Ruiz and his co-defendant. Id. at 37. The truck driver was not identified or arrested.

Cabrera-Ruiz' co-defendant said that Cabrera-Ruiz recruited him to help with the guiding. Id. The group had approximately 12 gallons of water for the 30 hour trek through the brush, along with corn, beans and tortillas. Id. at 41. The aliens, who were arrested as material witnesses, echoed the co-defendant's statement that Cabrera-Ruiz was the main guide and the co-defendant was the assistant. Id.

One of the material witnesses heard Cabrera-Ruiz tell the driver that a cop was following them. The driver said that the police were going to stop them, but that he, the driver, would not be easy to catch. The driver was heard arranging for someone to come pick him up. Id. Some of the witnesses told the Border Patrol that Cabrera-Ruiz threatened to hit them with a stick if they were not moving fast enough through the brush. Id. at 43, 44. One material witness heard Cabrera-Ruiz ask the driver in Spanish where was going to go in, referring to the brush on the side of the road, before the truck left the paved roadway while fleeing law enforcement.

Cabrera-Ruiz denied placing the members of the group in the truck and denied knowing the truck driver, but he admitted that he worked with the driver to move the group north and he knew the members of the group were illegal aliens. Id. at 46.

Sentencing was scheduled for June 2009 and a Presentence Investigation Report (PSR) was ordered. Id. at 49.

The base offense level for Transportation of Illegal Aliens is 12. D.E. 82 at ¶ 44. That level was increased by 3 due to the number of aliens smuggled. Id. Because the offense involved intentionally or recklessly creating a substantial risk of death or serious bodily injury, the offense level was increased to 18, and an additional 10 points were added because the offense resulted in death of a person. Id. The total offense level was 28. Three points were added for Cabrera-Ruiz' role as a manager/supervisor, and 3 points were subtracted for acceptance of responsibility, for a final offense level of 28. Id. at ¶¶ 47, 50, 51. Cabrera-Ruiz had no criminal history.

The Guideline imprisonment range was 78-97 months. Id. at ¶ 69. The PSR also noted mandatory restitution in this case. Id. at ¶¶ 79, 81, 82. Restitution was based upon the medical expenses of the injured aliens, ambulance fees, funeral expenses, and costs incurred by the Mexican Consulate.

Cabrera-Ruiz objected to paragraph 47, contesting the role adjustment calculation. D.E. 84. Counsel filed supplemental objections to the factual summary of the offense. D.E. 89. The PSR was corrected in response. D.E. 90.

At sentencing, the government urged the Court to adopt the PSR calculation and to adjust upwardly to reflect the number of persons injured and two deaths. D.E. 119 at 6. Defense counsel argued that at most, Cabrera-Ruiz' role assessment should be two points, not three. Id. The Court overruled the objection. Id. at 18.

The Court then departed upwardly on the basis that the Guideline calculation did not take into consideration the second death and the number of persons who sustained serious injuries, as well as the numerous instances of substantial risk including insufficient food and water during the 30 hour trek, the danger of the terrain, the placement of people in the vehicle, and the conduct in running from law enforcement which created additional risk and caused the two deaths and multiple serious injuries. Id. at 25-28. Cabrera-Ruiz was sentenced to 108 months imprisonment.

Defense counsel did not address restitution nor did he file a financial statement for Cabrera-Ruiz. Id. at 28-29. Cabrera-Ruiz was ordered to pay restitution in the amount of $103,915.35 to three individuals, various medical facilities, and three funeral homes for

funeral expenses, medical care, and other services to those injured and killed as a result of Cabrera-Ruiz' actions. The judgment required that Cabrera-Ruiz begin paying restitution within 30 days of sentencing at the rate of $430 per month. D.E. 94. Cabrera-Ruiz did not raise this issue on appeal.[2] D.E. 125.

### III. MOVANT'S ALLEGATIONS

Cabrera-Ruiz raises several grounds, all based upon the claimed violation of his Sixth Amendment right to effective counsel. His grounds are not completely clear but are set out here as he states them. Cabrera-Ruiz claims that trial counsel was ineffective at sentencing because counsel failed, 1) to object to double counting of the enhancement based upon the same criminal conduct and 2) to seek a variance because the Guidelines did not take into account the same conduct under the same offense characteristics. D.E. 127 at 4-5. He amplifies these grounds in his supporting memorandum. The first ground challenges the increase of three levels for creating a substantial risk of death and the 10 level increase due to an actual death. The second ground contends that the three level increase for endangerment is subsumed within the 10 level increase. Id. at 13.

### IV. ANALYSIS

**A.   28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: 1) constitutional issues, 2) challenges to the district court's

---

[2] A challenge to restitution may properly be made on appeal. See United States v. Hatten, 167 F.3d 884, 887 n. 5 (5th Cir. 1999) (a challenge to restitution is a nonconstitutional sentencing issue that should be raised on direct appeal).

jurisdiction to impose the sentence, 3) challenges to the length of a sentence in excess of the statutory maximum, and 4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992).

### B. Standard for Claims of Ineffective Assistance of Counsel

Generally, an ineffective assistance claim presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. United States v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001). To show that his attorney's performance at sentencing in a noncapital case was prejudicial under Strickland, the movant must demonstrate that counsel's error led to an increase in the length of his imprisonment.

Glover v. United States, 531 U.S. 198, 203 (2001); United States v. Herrera, 412 F.3d 577, 581 (2005).[3]

If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

**C.     Double Counting**

The only issue is whether counsel was ineffective for failing to challenge application of both the 3 level and 10 level enhancement. As an initial matter, although Cabrera-Ruiz pled guilty only to Count One of the Second Superseding Indictment,[4] Cabrera-Ruiz transported over 14 aliens, two of whom died.

A district court may consider all "relevant conduct" when fashioning a sentence. See United States v. Rhine, 583 F.3d 878, 882-83 (5th Cir. 2009) (considering total drug quantity that was part of the same course of conduct, not just that alleged in indictment); United States v. Elizondo, 475 F.3d 692, 696 (5th Cir. 2007) ("sentencing requires a judge to look at all the defendant's relevant conduct, not just the conduct that constitutes the offense"); United

---

[3] The Fifth Circuit adopted the "any amount of jail time" test in United States v. Grammas, 376 F.3d 433, 439 (5th Cir.2004). "This test originated from the Supreme Court's decision in Glover v. United States where the Court explained that any amount of additional jail time has significance under Strickland.." Id. (internal citations omitted).

[4] Count One charged him with Conspiracy to Transport Unlawful Aliens Which Resulted in the Death of Aliens, and caused the death of Elder Arely Ramos Abando and Homero Humberto Gutierrez.

States v. Fowler, 216 F.3d 459, 461 (5th Cir. 2000) (considering additional pornography found on defendant's computer for sentencing); see also U.S.S.G. §1B1.3 (Relevant Conduct).

The relevant conduct and the offense circumstances here includes Cabrera-Ruiz' participation in the conspiracy by guiding 14 illegal aliens through harsh terrain with inadequate food and water, transportation of 14 aliens in the bed of a pick up and within a tool box, and the further endangerment of each arising from the flight from law enforcement and the collision of the truck in which they were riding with a fence and a ditch. In addition to the two who died, three of the injured incurred significant medical treatment expenses, $44,964, $13,179.82, and $51,174.54 respectively (D.E. 82 at ¶ 37), and several others required medical care for less serious injuries. Id. at ¶ 38.

Under the circumstances, the addition of three points as enhancement for the multiple risks to 12 individuals, other than the two who died, is entirely proper and does not constitute double counting. The objection Cabrera-Ruiz claims that counsel should have made is not supported by the record. Counsel was not ineffective for failing to make a frivolous objection. See United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument. . . cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

### E. Motion to Reduce Restitution Repayment Schedule

Cabrera-Ruiz first filed a motion to reduce his fine in March 2011, which the Court construed as a motion to reduce his restitution. The Court dismissed the motion on the ground that Cabrera-Ruiz had not complied with the applicable statute and the Court had no authority to modify his request for modification of his restitution order. D.E. 141. Cabrera-Ruiz' new motion similarly does not provide the Court with any authority to modify the original judgment which required him to pay restitution at the rate of $430 per month during his incarceration. Cabrera-Ruiz is not paying anywhere near the amount ordered, but is paying approximately 50% of his BOP income towards that amount. The motion for modification (D.E. 144) is dismissed for the same reasons set out in this Court's previous Order dated March 29, 2011. D.E. 141.

### F. Cabrera-Ruiz' Objections

Cabrera-Ruiz filed objections to the government's response and to this Court's dismissal of his § 2255 motion. He objects to the government's entire response to preserve the record for appeal. D.E. 132. No legal objection is stated. The objection is OVERRULED.

Cabrera-Ruiz then objected to this Court's denial of his motion and urged the Court to reconsider. At the time the objection was filed, the Court had not yet ruled on the merits of his § 2255 motion, the Court OVERRULES the objection.

### V. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28

U.S.C. § 2253(c)(1)(A). Although Cabrera-Ruiz has not yet filed a notice of appeal, the § 2255 Rules instruct this Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, § 2255 Rules.

A COA "may issue. . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

As to claims that the district court rejects solely on procedural grounds, the movant must show both that "jurists of reasons would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484 (emphasis added).

Based on the above standards, the Court concludes that Cabrera-Ruiz is not entitled to a COA on any of his claims. That is, reasonable jurists could not debate the Court's

13

resolution of his claims, nor do these issues deserve encouragement to proceed. See Jones, 287 F.3d at 329.

## VI. CONCLUSION

For the foregoing reasons, Cabrera-Ruiz's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 127) is DENIED, his motion to modify the schedule of restitution (D.E. 144) is DISMISSED, his objections (D.E. 132) are OVERRULED, and he is also DENIED a Certificate of Appealability.

It is so ORDERED this 9 day of Aug 2011.

_____
HAYDEN HEAD
SENIOR U.S. DISTRICT JUDGE